In the Matter of Richard Francis SCHMIDT, Bankrupt.

L. C. CHRISTENSEN, Appellant,

v.

Henry DORMAN, Trustee, et al., Appellees.

In the Matter of Floyd Donald SCHMIDT, Bankrupt.

L. C. CHRISTENSEN, Appellant,

v.

Henry DORMAN, Trustee, et al., Appellees.

In the Matter of Floyd Donald SCHMIDT, et al., Bankrupts.

L. C. CHRISTENSEN, Appellant,

v.

Henry DORMAN, Trustee, et al., Appellees.

Nos. 14062–14064.

United States Court of Appeals Seventh Circuit.

July 10, 1963.

214

Vaudreuil & Vaudreuil, Kenosha, Wis., for appellant.

Leo E. Vaudreuil, Kenosha, Wis., for appellant.

Richard G. Harvey, Jr., Harvey & Harvey, Racine, Wis., for Mike Zold.

Fred W. Wheeler, Racine, Wis., for Durand Lumber Co.

John V. Whaley, Whaley & Whaley, Racine, Wis., for Clarence Surendonk.

Earl L. Christ, Racine, Wis., James J. Fetek, Racine, Wis., of counsel, for David Lonergan.

Jay Schwartz, Schwartz & Schwartz, Racine, Wis., for Richard Tarwid.

Before KNOCH, KILEY and SWYGERT, Circuit Judges.

KNOCH, Circuit Judge.

These appeals were taken from the decision of the United States District Court, on petitions for review of an order of the Referee in Bankruptcy determining the validity of certain liens claimed to funds, in the hands of the Trustee in Bankruptcy, for work performed or materials furnished in construction of a building.

Our study of the record shows the findings of the District Court to be substantially supported by the evidence. They disclose the train of events set out in the following brief summary.

The Schmidts (father and two sons) were partners doing business as "Smitty's Restaurant." L. C. Christensen was engaged in the real estate and insurance business, and in financing purchases of real and personal property in Racine, Wisconsin.

In June, 1954, the Schmidts, negotiated with L. C. Christensen for purchasing the property at 1216 Douglas Avenue, Racine (across the street from the restaurant they were then operating), financing the building and equipping a restaurant on the new site. They paid Mr. Christensen $500 in August, 1954.

During the following month, L. C. Christensen bought the lot at 1216 Douglas Avenue for $7,500 on September 7, 1954, and obtained title by duly recorded warranty deed, naming him as grantee.

The Schmidts began negotiating with contractors and suppliers. They acted principally through Robert T. Schmidt. Early in October, 1954, the building which was already located on the new site was moved to the rear of the lot and the foundation for the new building was constructed immediately in front of it. By February, 1955, the building was nearly complete and the Schmidts began operating the new restaurant there. This operation terminated in bankruptcy proceedings early in December, 1955.

The 1216 Douglas Avenue property was sold at public auction free and clear of the liens and encumbrances which

were to attach instead to the proceeds of the sale, or, in the alternative, free of encumbrances but subject to Mr. Christensen's contractual rights. The sale yielded $28,000 for the real estate and $18,000 for the personal property.

The sole issue tried by the Referee and presented to the District Court for review concerned the validity and priority of the various contractors' liens as statutory liens pursuant to Wisconsin law.

The Wisconsin statute provides:

"289.01. *Contractors' liens.*

"(1) *Definition.* In this chapter unless the context or subject matter otherwise requires:

"(a) 'Contractor' means a person, other than a laborer, who enters into a contract with the owner of land to improve it * * *

* * * * * *

"(c) "Owner" means the owner of any interest in land who enters into a contract for the improvement thereof.

* * * * * *

"(4) *Express agreement of owner.* This section does not give a lien upon the interest of any owner in land unless there is an express agreement between him and the contractor whereby such owner agrees to pay for or become responsible for the payment of the improvement."

There is no question of any procedural irregularity of the claims for liens, the respective amounts or the status of the lien claimants as "contractors."

It is clear from the statute (which was revised in 1935 to read as quoted above) that the interest of an owner cannot be charged with a contractor's lien merely because of his knowledge and consent to performance of the work.

The Schmidts and L. C. Christensen initially operated under a verbal agreement. Mr. Christensen agreed to lend the Schmidts $42,000 out of which he would make payments on presentation of statements approved by the Schmidts for completion of various portions of the construction work. Mr. Christensen also inspected the premises prior to purchase, reviewed the plans and sketches prepared by the Schmidts; took record title to the realty (as indicated); contracted for moving the existing building and for excavating for the new building; paid certain insurance charges without approval in advance by the Schmidts; and participated in price negotiation prior to commencement of work by at least one contractor.

On December 16, 1954, when the new building was already under roof, Mr. Christensen, the Schmidts and their wives, entered into a written "Option and Agreement" whereby Mr. Christensen agreed to give the Schmidts an option to purchase the 1216 Douglas Avenue property, including all the equipment, which was to remain Mr. Christensen's property until the $42,000 was fully paid (in stated instalments) or until reduced to a sum which could be obtained by either party by giving mortgages. The instrument states that it relates to a loan made by Mr. Christensen and not to a sale of real estate. The Schmidts were to give as collateral a quit-claim deed to certain property on Green Bay Road, a chattel mortgage on restaurant equipment (which was executed, dated December 16, 1954, and filed December 17, 1954) and on three automobiles which they owned, in addition to assignments of life insurance policies.

There is further provision for forfeiture of sums paid by the Schmidts, avoidance of option on default, and payment of legal fees if Mr. Christensen found it necessary to employ counsel to repossess the premises. Mr. Christensen was not to be required to foreclose as under a land contract or mortgage.

Floyd Donald Schmidt and Richard F. Schmidt filed individual petitions in bankruptcy on or about October 31, 1955. A voluntary partnership petition in bankruptcy was filed for "Smitty's Restaurant" on December 7, 1955. Although the "Option and Agreement" was dated

December 16, 1954, it was not recorded until after December 7, 1955.

By a bookkeeping entry dated December 16, 1954, Mr. Christensen credited $42,000 to the account of the Schmidts under the heading "new option." The money was not placed in escrow or in any special account.

By December 7, 1955, the date of the partnership petition in bankruptcy, there was still a balance of about $5,600 unexpended and credited to the Schmidts. Payments by the Schmidts included the aforesaid $500 initial payment, $2,250 in weekly installments of $125, about $830 excess proceeds of a mortgage, and one rental payment of $375. The Schmidts had obtained an $11,000 loan from F. W. Boelter Company (whose interest is not involved in this appeal) which the Schmidts paid directly to contractors and materialmen.

We are in full agreement with the learned District Judge's statement of the Law as follows:

"In accordance with the lien statute and the case law, the interest in realty of any owner, including an owner by virtue of holding record title or as land contractor vendor, is subject to a lien where the owner expressly agreed with the contractor that he would pay for his services or that said owner would become responsible for the payment of the improvement. Delap v. Parcell, 230 Wis. 152 [283 N.W. 305] (1939); Fraser Lumber & Manufacturing Co. v. Laeyendecker, 243 Wis. 25 [9 N.W.2d 97] (1943).

"The statutory lien based on the express agreement of the owner extends only to payment for materials and labor furnished subsequent to the making of the agreement, although the benefit conferred by work performed prior thereto may serve as consideration to support an actionable promise to pay therefor. Fraser Lumber & Manufacturing Co. v. Laeyendecker, supra, [243 Wis.]

at 28 and 29 [9 N.W.2d at 98 and 99].

\* \* \* \* \* \*

"In the absence of an express agreement by the owner of real estate, the interest of said owner may nevertheless be chargeable with a contractor's lien under principles of the law of agency in that the promise of the agent to the contractor may be binding upon his principal. [Citing Bourdo v. Preston, 259 Wis. 97 (1951), 47 N.W.2d 439]"

In the matters before us, as the District Court found:

"The Schmidts and Christensen acted in furtherance of a common objective—the acquisition and improvement of the premises at 1216 Douglas Avenue by the construction and equipment of a restaurant building thereon. Christensen's purpose was the improvement of the acquired premises—the creation of a valuable business property—which he had promised to sell to the Schmidts and which he would permit the Schmidts to use until sale on terms resembling a lease. The Schmidts acted to construct the improvement for the purpose of operating a restaurant on the premises."

The record supports the District Judge's findings that Mr. Christensen sometimes refused to make payments to contractors and other creditors even though the Schmidts had approved the work done and there was a credit balance in their favor. On the other hand, on December 28, 1954, he paid about $22,450 to F. W. Boelter Company for restaurant equipment without the consent of the Schmidts, when he must have known that such payment would entail the failure of the entire financing arrangement. The equipment was sold and assigned directly to Mr. Christensen by a duly filed bill of sale dated January 31, 1955. Mr. Christensen also charged the Schmidt account with insurance and interest payments on the full amount of

$42,000 plus another $4,000 (a mortgage on the Green Bay Road property to which the Schmidts had given Mr. Christensen the quit-claim deed mentioned above) although the entire sum was never actually paid out for their account. Mr. Christensen also negotiated with some of the contractors for reduction of the payments due them.

Under all of the circumstances of this case, we are obliged to affirm the District Judge's conclusion:

"The relationship between L. C. Christensen and the Schmidts in respect to the acquiring of the 1216 Douglas Avenue site and the construction and equipment of a restaurant at that site must be deemed to be that of joint venture or of principal and agent."

The District Judge did not rely, as Mr. Christensen suggests, on the various statements made by the Schmidts to third parties, but on the clear showing of mutual consent of the parties that the Schmidts, as agents, might act on the principal's (Mr. Christensen's) account. As the District Judge states:

"Christensen knew that he was the legal owner of the premises and that he would retain legal title to the lot and improvements until full payment or arrangement for mortgages was made. Christensen further knew that the Schmidts were acting to make improvements on these premises; in fact, he took an active role in the acquisition of the site and construction of the improvement.

"The Schmidts knew, or should have known, that Christensen was the legal owner of the premises, and that Christensen would remain the owner of the improvements they were acting to have made on said premises until they had completed performance under the agreement of the parties.

"The Schmidts further knew that Christensen consented by direction and acquiescence to their acting in furtherance of the enterprise, that he exercised control over their activities by approval and direct participation, and that he controlled the financial aspects of their enterprise. With this knowledge, the Schmidts continued to act in furtherance of the project."

He found a manifestation of consent from the conduct of the parties in the light of the circumstances which made it reasonable for another to infer consent. Thus Mr. Christensen as an undisclosed or only partially disclosed principal was bound by the express promises of his agents, the Schmidts, who agreed with the lien claiming contractors[1] that they would pay for the improvements. Bourdo v Preston, 259 Wis. 97, 47 N.W.2d 439, 441 (1951); Union Trust Co. of Md. v. Rodeman, 220 Wis. 453, 472, 264 N.W. 508, 515 (1936); City Lumber & Supply Co. v. Fisher, 256 Wis. 402, 406, 41 N.W.2d 285, 287 (1950); Builders Lumber Co. v. Stuart, 6 Wis.2d 356, 361, 94 N.W.2d 630, 633 (1959).

The District Court's decision that L. C. Christensen's interest in the proceeds of the sale of the realty is subject to the contractors' claims for liens is affirmed.

Affirmed.

1. Mike Zold, Richard Tarwid, David J. Lonergan, Durand Avenue Lumber Co., Clarence Surendonk.